**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**RODNEY HANK WILLIAMS,**

     **Petitioner,**

  **v.**                            **CRIMINAL ACTION NO. 2:01cr231**
                                       **CIVIL ACTION NO. 2:04cv129**

**UNITED STATES OF AMERICA,**

     **Respondent**.

### *MEMORANDUM OPINION AND ORDER*

This matter is before the Court on Petitioner, Rodney H. Williams's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.  For the following reasons, Petitioner's motion is **DENIED**.

### I.  FACTS AND PROCEDURAL HISTORY

The Petitioner, Rodney H. Williams, was charged on March 13, 2002 with twelve counts of wire fraud, two counts of identity theft, and one count of false use of a social security number in violation of 18 U.S.C. §§ 1343 and 1028(a)(7), 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2 (1998).  The charges stemmed from Petitioner's scheme by which he submitted fraudulent insurance claims in order to receive compensation for his injuries, lost wages, and property damage.

Petitioner's scheme ran from July 1997 to March 2000, involved four separate insurance companies, and claims for over $800,000.  The first step of Petitioner's scheme involved obtaining a large insurance policy on a particular vehicle.  Shortly after securing insurance coverage, Petitioner would claim that he was involved in an accident and suffered injuries.  In

several cases, Petitioner would increase or add coverage shortly before the accident.  The claimed accidents, as Petitioner reported them, usually involved Petitioner's car being struck by another vehicle or forced off the road by another vehicle into a guardrail or tree.  In all of the cases, no second vehicle was ever found.  In addition, Petitioner's injury usually involved some type of head injury, and always an injury to his eye that cause blurred vision or a dilated pupil. The vehicles Petitioner insured were obtained in various ways, but several had questionable title certificates involving transfers to non-existent companies, or to one of Petitioner's several aliases. After the accidents, Petitioner would then submit an insurance claim seeking compensation for his injuries.

The claims were filed, and the insurance policies obtained, by Petitioner using at least four different aliases and social security numbers.  In several of the claims, Petitioner used the name and social security number of his brother, Kenneth Williams.  Petitioner also involved his then wife and co-defendant, Elizabeth House Janes, in the scheme.  Janes was involved in at least one of the accidents for which Petitioner claimed insurance coverage, and the vehicle in that accident was insured by a policy in Janes's name.

Petitioner was arrested in Florida after filing a fraudulent claim with USAA in Virginia. The other claims involved accidents from South Carolina and Georgia, but the Court treated them as the same scheme because of the commonality involved in the methodology and tools used in the crime. (Tr. of Pre-Trial Motions at 34 (citing 18 U.S.C. § 3237)).  Thus, all of the claims were brought jointly in the Eastern District of Virginia.

Petitioner's defense at trial was that he was issued a different name and social security number by the government because of his cooperation with authorities on another matter, and

2

that he used the names for various artistic purposes.  He also attempted to prove that his brother Kenneth had given him power of attorney over his affairs, and that he was authorized to make claims on his behalf.  In addition, he claimed that Kenneth suffered from mental problems that prevent him from providing a truthful and accurate portrayal of events.

Petitioner demonstrated an unprecedented inability to cooperate with three separate court appointed counsels.  The Court first appointed Larry Shelton, the supervising federal public defender to represent Petitioner.  Mr. Shelton was allowed to withdraw because of Petitioner's dissatisfaction and refusal to work with him.  Next, the Court appointed Mr. Duncan St. Clair III on June 21, 2002,  who served as Petitioner's trial counsel.  With Mr. St. Clair as counsel, the Petitioner was tried and found guilty by a jury on all counts.  Petitioner was tried along with Elizabeth Janes, his co-defendant and spouse as of then, who was also convicted on all counts.

After trial, Petitioner filed a complaint against his second counsel, and the Court appointed a third attorney, Mr. Charles Burke, to represent Petitioner at sentencing.  On January 27, 2003, Petitioner was sentenced to sixty (60) months imprisonment each on counts one through twelve, thirty-six (36) months imprisonment each on counts thirteen and fourteen to be served concurrently, and twenty-six (26) months imprisonment for count fifteen to be served consecutively, for a total of eighty-six months. (Tr. of Sentencing Proceedings at 87.)  He was also ordered to pay restitution in the amount of $186,942.58 to victims State Farm, Geico, and USAA jointly and severally with co-defendant Janes.  Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on March 1, 2004.  The Petitioner then filed an Emergency Motion for Bail on July 12, 2004.  Petitioner has most recently filed a Motion to Expedite § 2255 Motion.

## II.  LEGAL STANDARDS

A prisoner in federal custody can bring a petition to vacate, set aside, or correct their sentence if it was imposed in violation of the "Constitution or laws of the United States, ... or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 (2000).  A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 bears the burden of proving his grounds for collateral attack by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546 (4th Cir. 1958); *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967).  If the motion is brought before the judge that presided over the conviction, the judge may rely upon recollections of previous events.  *Blackledge v. Allison*, 431 U.S. 63, 74 n. 4 (1977); *Carvell v. United States*, 173 F.2d 348, 348-49 (1949) (stating it is highly desirable that § 2255 motions "be passed on by the judge who is familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred.").

It should also be noted that the burden on a petitioner collaterally attacking his sentence under § 2255 is heavier than his burden on appeal.  To obtain relief, Petitioner must meet the two part "cause and actual prejudice" test.  *United States v. Frady*, 456 U.S. 152, 167-68 (1982).  Under that test, "[t]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.*; *United States v. Maybeck*, 23 F.3d 888, 890 n.1 (4th Cir. 1994).

A federal court considering a petition for habeas corpus must grant an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief." 28 U.S.C. § 2255; *Raines v. United States*, 423 F.2d 526, 529

(4th Cir. 1970).  Although the Court can expand the record to include affidavits and other

exhibits, if the issue is one of credibility, the Court usually must hold an evidentiary hearing.

*Raines*, 423 F.2d at 530.

A court considering a habeas petition usually will not reach the merits of a claim already

raised and rejected on direct appeal absent countervailing considerations.  *Withrow v. Williams*,

507 U.S. 680, 720 (1993) (J. Scalia, consenting in part and dissenting in part); *Kaufman v.

United States*, 394 U.S. 217, 227 n.8 (1969).

### III.  DISCUSSION

The Petitioner has raised numerous claims in his petition, some of which will be

considered together because they are similar.  The Petitioner first argues that his pre-trial counsel

was ineffective for his alleged failure to properly interview prospective witnesses, his failure to

file appropriate pre-trial motions, and his improper stipulation of Petitioner's eye injury.

Second, Petitioner argues that his trial counsel was ineffective based upon his failure to advance

Petitioner's proposed motions, failure to introduce evidence of a crucial witness's alleged mental

difficulties and potential bias, and failure to investigate potential exculpatory witnesses.  Third,

Petitioner alleges that his sentencing and appellate counsel was ineffective for improperly

disclosing the fact of a judicial complaint, his failure to challenge several sentencing

enhancements, failure to make *Apprendi* arguments, and for filing an *Anders* brief without

Petitioner's consent.  Finally, Petitioner argues that his sentence exceeded the maximum allowed

by the Sentencing Guidelines and was therefore illegally imposed, and that the sentencing range

was invalid based upon information on which the jury did not reach a verdict.

**A.      Ineffective Assistance of Pre-Trial Counsel**

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that counsel's representation was deficient and that Petitioner was prejudiced by counsel's performance.  *Strickland v. Washington*, 466 U.S. 668, 693 (1984).  In order to show deficient representation, Petitioner must show "that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance under the circumstances.  *Id.* at 689; *United States v. Matthews*, 105 F.3d 907, 919 (4th Cir. 1997).  In order to show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Matthews*, 105 F.3d at 919 (citing *Strickland,* 466 U.S. at 694).

Petitioner begins by attacking the effectiveness of his pre-trial attorney, Mr. Shelton, for his failure to illicit appropriate information from prospective witnesses and his failure to meet with Petitioner to prepare adequately for trial.  In addition, he claims that counsel did not file the pre-trial motions that Defendant suggested.  Those motions included a motion to disallow or at least object to the testimony of Mr. Kenneth Williams, Petitioner's brother and alleged victim of the identity theft, and a motion to dismiss.  In addition, Petitioner claims that counsel stipulated to his eye injury rather than allow a physician to testify, in opposition to his wishes.  The government argues, and provides an affidavit of Mr. Shelton in support, that counsel did meet with Petitioner prior to trial several times, attempted to contact all of the witnesses, and did file those motions that were non-frivolous. (Gov't Resp. to Pet'r Mot. under § 2255 to Vacate, Set

Aside or Correct Sentence at Ex. A) ("Gov't Resp".)  Mr. Shelton further stated that he filed the motion to withdraw as counsel because of problems with the Petitioner when he (Shelton) refused to advance frivolous claims or defenses.  *Id.*

Counsel's alleged failure to advance motions, consent to stipulations, and failure to object were all strategic decisions made during trial.  An attorney's trial decision or advice is not grounds for post-conviction relief unless a petitioner can show that the error resulted from neglect or ignorance rather than from informed, professional deliberation.  *McMann v. Richardson*, 397 U.S. 759, 770-71 n.7 (1970); *Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977)*.*  Counsel did raise and argue a pre-trial motion to dismiss claiming that the venue was improper because all of the insurance claims should be treated separately rather than as one overlapping scheme. (Tr. of Pre-Trial Mot. at 4.)  In addition, it appears Counsel's decision to stipulate to the eye injuries resulted from his decision that bringing several doctors in to testify would be extremely expensive and the government was not disputing the fact of the injuries, but instead the conclusions to be drawn therefrom. (Tr. of Pre-Trial Mot. at 4.)  The Court thus finds that counsel's alleged deficiencies result from Petitioner's dissatisfaction with his decisions, rather than a neglect or ignorance of the case.

Further, Petitioner has not alleged any specific deficiencies relating to counsel's performance that would show he was prejudiced by counsel's decisions.  The Court found that the out-of-state witnesses' testimony was not relevant,[1] and denied a later motion to arrange for

---

[1]Petitioner's counsel asserted at the hearing for the Motion to Withdraw that he had spoken in depth with four of the six witnesses proposed by Petitioner, and none of them had any information relevant to an ethical defense.  He also asserted that he had been unable to contact the last two, but he expected that they similarly did not have any relevant information. (Tr. of Mot. to Withdraw at 14.)

their transportation to the trial. *United States v. Williams*, No. 2:01cr231 (July 25, 2002) (denying Motion for Service and Transportation of Witnesses).[2]   The Court also failed to disallow the testimony of Kenneth Williams, lending validity to counsel's trial decisions.  In addition, on non-frivolous issues such as venue, counsel made and argued motions.  The Court gives enormous deference to counsel's decision whether to call a particular defense witness. *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2002).  Further, counsel is not ineffective unless they fail to reasonably investigate  possible mitigating evidence. *Byram v. Ozmint,* 339 F.3d 203, 210 (4th Cir. 2003) (citing *Matthews v. Evatt*, 105 F.3d 907, 919 (4th Cir. 1997)). Petitioner has failed to meet the burden of showing that counsel's performance fell below an objective standard of reasonableness, much less that but for counsel's errors, the outcome would have been different.  *See Strickland*, 466 U.S. at 688, 694.  It should also be noted that the Court granted Mr. Shelton permission to withdraw as counsel prior to the commencement of trial, and thus his alleged inactions were not relevant to the actual trial.

**B.     Ineffective Assistance of Trial Counsel**

Petitioner next attacks the effectiveness of his trial attorney, Mr. Duncan R. St. Clair, III. He claims that Mr. St. Clair did not make appropriate motions including a motion to dismiss based on a faulty indictment, a motion to subpoena witnesses for the defense, and a motion concerning the Respondent's alleged misconduct in attempting to secure a guilty plea.  The government argues, supported by Mr. St. Clair's affidavit, that Mr. St. Clair did in fact file a

---

[2]Petitioner's trial counsel, Mr. St. Clair, later asserted that none of the prospective witnesses would appear without the Court's order for transportation. (Am. and Revised Position of Def. with Respect to Sentencing Factors Ex. I (Counsel's Resp. to Pet'r Va. State Bar Compl. at 2)) ("Am. Position").

motion requesting that witnesses be subpoenaed, which was denied, and that he determined that the motion to dismiss and motion objecting to venue were frivolous. (Gov't Resp. at 15, Ex. B.) Petitioner then filed a Motion to Dismiss,[3] which was properly dismissed by the Court, since Petitioner was represented by counsel. *See United States v. Agofsky*, 20 F.3d 866 (8th Cir. 1994) (finding "[t]here is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel").  The Court finds that Petitioner's alleged trial counsel deficiencies are not supported by the record.  Mr. St. Clair did file at least one relevant motion on which the Court ruled, and Petitioner's prior counsel's motion to dismiss had already been denied.  Again, Petitioner's allegations stem from his dissatisfaction with counsel's decisions and his failure to advance non-meritorious claims rather than counsel's neglect. (Tr. of Pre-Trial Motions at 56); *see McMann*, 397 U.S. at 770-71 n.7.

Petitioner also argues that counsel should have objected to the indictment because it excluded relevant exculpatory facts, it was based on the perjured testimony of a federal agent, and it was based upon the testimony of a witness with mental problems.  An indictment must consist of a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  Generally, Courts have found that an indictment need only reiterate the language of the statute involved and state the time and place of the alleged crime.  *See United States v. Stavroulakis*, 952 F.2d 686 (2d. Cir. 1992).  Thus, the failure to include exculpatory evidence in Petitioner's indictment is wholly consistent with federal criminal procedure, and counsel cannot be ineffective for failing to raise this non-meritorious

---

[3]Petitioner's motion to dismiss was based on the alleged misconduct of the Assistant United States Attorney in attempting to secure a guilty plea and for obtaining a faulty indictment.

claim.  In addition, an indictment is only defective if the alleged violation substantially influenced the grand jury's decision to indict. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988); *United States v. Mills*, 792 F. Supp. 444, 446 (M.D.N.C. 1992).  A facially valid indictment is sufficient for a trial to go forward, even if supported by erroneous, fraudulent, or hearsay  testimony. *Mills*, 792 F. Supp. at 446; *United States v. Alexander*, 789 F.2d 1046, 1048 (4th Cir 1986) (citing *Costello v. United States*, 350 U.S. 359, 364 (1956)).  Any challenge to Petitioner's indictment would fail because the indictment was facially valid.  Therefore, counsel did not fall below an objective standard of unreasonableness for failing to challenge the indictment.

Petitioner's counsel has also sworn that he did not file a motion to object to the Respondent's conduct because he thought the issue to be frivolous.  Petitioner raised the same claim in a letter to the Virginia State Bar, and it was found to lack merit.  Likewise, on direct appeal, the issue of prosecutorial misconduct was found to lack merit. *See United States v. Williams*, No. 03-4148, slip op. at 2-3 (4th Cir. July 29, 2003) (per curiam) (finding that the indictment was not defective, there was no evidence of prosecutorial misconduct, no evidence of judicial misconduct, and that the motion regarding venue was properly denied).  The Court therefore finds that Petitioner's claims for the failure of counsel to raise various motions lack merit and were rejected on direct appeal.

Petitioner also claims that Mr. St. Clair did not meet with him enough before trial, and that he was inadequately prepared.  Petitioner states that Mr. St. Clair was appointed only twenty-one days prior to trial, and met with him only three times prior to beginning trial.  Mr. St. Clair was appointed on June 21, 2002, the day after Mr. Shelton's motion for withdrawal was

submitted.  The trial was then postponed until August 1, 2002 to give Mr. St. Clair

approximately forty days to prepare for trial. *United States v. Willliams*, No. 2:01cr231 (E.D. Va.

June 21, 2002) (order granting Motion to Withdraw).  The Petitioner's allegations regarding the

time allowed before trial are contrary to the record.  With regards to the allegations that Mr. St.

Clair did not meet with him enough, the Petitioner has not alleged any prejudice.  "The brevity

of contacts between counsel and defendant, standing alone, is not sufficient to support a claim of

ineffective assistance." *Gardner v. Dixon*, 966 F.2d 1442, *4 (4th Cir. 1992) (citing *Murray v.

Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)).  Petitioner must also show a breakdown of

communication or some other prejudice resulting from the infrequent meetings. *Id.*

　　　Petitioner next contends that Mr. St. Clair failed to properly refute the charges that

Petitioner filed fraudulent USAA claims.  Petitioner argues that he was not unjustly enriched by

any payments made by USAA, that he had withdrawn any claim requesting payment, that the

time to request payment had expired, and thus the USAA claim shouldn't have been included in

determining the amount of financial loss he had caused as it applies to the sentencing guidelines.

(Pet'r Mot. to Vacate Sentence at 10).  Petitioner's arguments are only relevant to the sentencing

phase of the trial because the relevant inquiry at the guilt phase is the Petitioner's conduct and

intent at the time the claim was filed. *See United States v. Kyle*, 84 Fed. Appx. 288, 289 (4th Cir.

2003).  At the sentencing phase, Petitioner's counsel did argue that the USAA claim should not

be included in determining the amount of financial loss, and the Court rejected that argument.

The Court found that the relevant inquiry was intended loss, and that Petitioner's filing of the

$500,000 claim indicated that he intended to receive that amount from USAA, despite the

economic reality that claimants almost never receive the full amount of a claim.  (Tr. of

11

Sentencing Hr'g at 39) (discussing *United States v. Miller*, 316 F.2d 495, 502 (4th Cir. 2003) (finding that courts should use intended loss in calculating a defendant's sentence, "even if this exceeds the amount of loss actually possible, or likely to occur, as a result of the defendant's conduct.")); USSG § 2B1.1, cmt. n.3(A)(ii).  The Court properly applied the *Miller* standard, and thus Petitioner cannot show that even if his attorney failed to vigorously cross-examine witnesses, he was prejudiced by such a failure.

Petitioner raises numerous other issues that counsel purportedly failed to advance, including the failure to show that Petitioner's name changes were for artistic reasons rather than to avoid child support; his failure to demonstrate to the jury the diminished mental capacity of Mr. Kenneth Williams ("Kenneth"), a key witness; his failure to establish that Petitioner had Power of Attorney authority to file claims on Kenneth's behalf; his failure to secure and review a plea agreement, and his failure to make *Apprendi* objections.  With regards to the name changes, counsel specifically questioned Petitioner about his use of different names for writing and artistic purposes. (Tr. at 471.)  Petitioner's allegations of counsel's failure to introduce such information is not supported by the record.  Neither is Petitioner's claim that counsel did not establish that he had power of attorney authority.  The trial transcript also indicates that counsel raised the issue of the Power of Attorney at trial when applicable. (Tr. at 65, 474.)  Ms. Willams, Kenneth's wife, also referred to Petitioner's authority to help Kenneth with regards to his employment. Kenneth, himself, was not called as a witness except in rebuttal on specific issues.

Petitioner also claims that counsel failed to cross examine Ms. Williams on her testimony that Petitioner changed his name to avoid child support.  His claim is supported by his divorce disposition ordering no child support payments.  *See* Am. Position Ex. G.  Petitioner fails to show

that counsel's failure to raise this one issue so prejudiced him that the result of the proceeding would have been different.  Ms. Williams' testimony was not a definitive statement regarding the reason for the name changes, but instead was based upon what Petitioner's co-defendant Ms. Janes told her regarding Petitioner's name changes. (Tr. at 350.)  *Strickland* requires not only that counsel's performance fall below an objective standard of reasonableness, but that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. 466 U.S. at 694  Petitioner has not met that burden merely by showing that counsel failed to cross-examine a witness on the issue, when he did bring out Petitioner's testimony that specifically contradicted the witness's statement. (Tr. at 464.)

Regarding Kenneth's diminished capacity, as the Respondent avers, counsel for Petitioner's co-defendant attempted to raise the issue on cross-examination, and the Court sustained the government's objections to the line of questioning. (Tr. at 512-15.)  Despite counsel's efforts, the Court would not allow the issue to be raised, so counsel's failure to introduce prohibited evidence does not fall below an objective standard of reasonableness.  The Government did not call Kenneth as a witness except to rebut Petitioner's testimony, and thus Petitioner's counsel did not have an opportunity to cross examine him on the issue of diminished capacity.  As the record indicates that counsel raised the issue, Petitioner's argument that he was ineffective for failure to do so lacks merit.

Petitioner additionally claims that Mr. St. Clair failed to attend the pre-sentence interview with the probation officer, and failed to object to the trial going forward when Petitioner was injured in a van accident on the way to court.  Unless the government acts to prohibit counsel from attending a pre-sentence interview, a defendant's Sixth Amendment right to counsel is not

violated if counsel is not present at the pre-sentence interview.  *See United States v. Johnson*, 935 F.2d 47, 50 (4th Cir. 1991) (finding that pre-sentence interview is not "critical stage" of trial for which right to counsel attaches).  Though failure to attend such a conference is not a Constitutional violation in itself, Petitioner could still demonstrate that it was objectively unreasonable of counsel not to attend.  Here, however, Mr. St. Clair sent his assistant to the meeting and Petitioner alleges no prejudice that occurred other than a vague suggestion that as a result he was unable to defend himself at the sentencing hearing. (Pet'r Mot. to Vacate Sentence at 13.)  Petitioner had a third attorney at the actual sentencing, however, so his claim of being unable to defend himself lacks merit and he cannot show prejudice from Mr. St. Clair's failure to attend the interview himself.  In addition, Petitioner can show no prejudice from trial going forward after the van accident.  He alleges no specific injuries of any type, nor any defenses he would have raised but for the accident.  Therefore he cannot show any prejudice.

Finally, the Petitioner's claim that Mr. St. Clair failed to obtain and review with him a plea agreement.  However, this contention lacks merit as an agreement was drafted and presented to Petitioner and he rejected it. (Movant's Resp. to Gov't Position on Movant's § 2255 Mot. Ex. A, Gov't Resp. Ex. E (Aff. of Mr. St. Clair), Am. Position Ex. I (Counsel's Resp. to Pet'r Va. State Bar Compl. at 2)).  The Court referred this claim of ineffective assistance of trial counsel for an evidentiary hearing.  The Magistrate Judge conducted an extensive inquiry into this claim. He found that Petitioner's trial counsel, St. Clair, not only obtained a plea agreement for Petitioner, but requested that it contain the specific terms Petitioner desired.  Further, the Magistrate Judge found that St. Clair and his associates reviewed the plea agreement with Petitioner, and Petitioner rejected it because he was dissatisfied with its terms.  Therefore, he

14

found the claim of ineffective assistance of counsel lacks merit and recommended that it be

denied.  Having reviewed the Magistrate Judge's factual findings and recommendations *de novo*,

the Court adopted and accepted the findings and recommendations in a separate Order dated

October 18, 2006.   Accordingly, the Court finds that Petitioner's claim that trial counsel was

ineffective because he fail to secure and review a plea agreement with him is wholly without

merit.  Petitioner is not entitled to relief based on this claim.

### C.    Ineffective Assistance of Sentencing and Appellate Counsel

Petitioner also raises the claim that he was denied effective assistance of counsel at his

sentencing and on appeal.  First, he argues that Mr. Burke,[4] against Petitioner's wishes, disclosed

to the judge prior to sentencing that Petitioner had filed a judicial complaint.  Mr. Burke

indicated to the Court that it was his understanding that Petitioner wanted the judge to know

about the complaint prior to sentencing. (Gov't Resp. Ex. D.)  In addition, the Virginia State Bar

conducted an investigation into the disclosure upon Petitioner's filing of a complaint, and found

that the judge would have known about the judicial complaint regardless of counsel's disclosure.

(Gov't Resp. Ex. C (Va. State Bar letter dismissing Pet'r complaint)).  While their findings are

not binding on this Court, it is relevant evidence that the Court can consider.  Given this

probability that the judge would have known about the complaint anyway, and counsel's

assertion that he believed he was acting under Petitioner's request, the Court does not find that

counsel's disclosure fell below an objective standard of reasonableness.  In addition, Petitioner

can show no prejudice from the disclosure, given that the Court of Appeals found no evidence of

---

[4]After Petitioner filed a complaint against his second counsel, Mr. St. Clair filed a Motion
to Withdraw, which the Court granted and appointed Petitioner a new attorney, Charles Burke,
prior to sentencing.

judicial misconduct. *Williams*, No. 03-4148, slip op. at 2; *In the Matter of a Judicial Complaint*, No. 02-9060 (4th Cir. Dec. 24, 2002) (finding that Complainant's claim of judicial misconduct lacked merit).

Petitioner also asserts that Mr. Burke failed to challenge the prior convictions that were used to enhance Petitioner's sentence.  Petitioner claims that his enhanced sentence was based upon a South Carolina case where it was found that his actions were related enough to be grouped together to constitute one offense, rather than several.  Petitioner claims that because of counsel's failure to object, he was unable to introduce evidence of the outcome in that case.  The Petitioner's claims lack merit and have no support in the record.  At the sentencing hearing, Petitioner's counsel raised numerous objections to the Petitioner's criminal history category, and other enhancements. (Tr. of Sentencing Hr'g at 54, 56.)  Counsel also submitted a twenty-page Position of Defendant with Respect to Sentencing Factors with extensive exhibits, objecting to numerous items in the pre-sentence report.  The Court heard and ruled upon many of the objections raised, and the Court of Appeals later affirmed its determination of the criminal history category and application of the enhancements under the Sentencing Guidelines. *Williams*, No. 03-4148, slip op. at 3.  Thus, Petitioner's claims regarding counsel's alleged failures are contrary to the record, and lack merit.

Petitioner also claims that Mr. Burke failed to make any *Apprendi* objections because he was ignorant of that case law.  As discussed below, the Petitioner does not have a valid argument under *Apprendi* as his sentences did not exceed the statutory maximums.  Furthermore, counsel cited that case several times in Defendant's position papers, and thus Petitioner's claim directly contradicts the evidence. (Am. Position at 9 and 12, Position of Def. with Respect to Sentencing

16

Factors at 3 and 7).

The Petitioner also argues that counsel denied him access to the trial transcripts to be used in preparing his appeal. The Petitioner's claim contradicts the record. Petitioner filed a Motion for Transcripts through counsel, and the Court granted Petitioner's Motion, and the transcripts were then entered into the record. Counsel also filed a motion on behalf of Petitioner for authorization for funds to copy the transcript for Petitioner to have his own copy. The record indicates that counsel acted to help give Petitioner access to the trail transcripts and thus Petitioner's allegations regarding counsel's failures are inaccurate.

Finally, Petitioner claims that Mr. Burke was ineffective for filing an *Anders* brief on appeal asserting that there were no cognizable issues for appeal without consulting with Petitioner. Counsel is required to file a notice of appeal if a criminal defendant requests that one be filed. *See Rodriguez v. United States*, 395 U.S. 327 (1969); *United States v. Peak*, 992 F.2d 39, 41 (4th Cir. 1993). Counsel has a professional obligation not to file frivolous motions or appeals. *See McCoy v. Court of Appeals of Wisc.*, 486 U.S. 429, 438 (1988). Mr. Burke filed a notice to appeal, then found no valid bases for appeal, so filed an *Anders* brief certifying that fact.[5] He also gave the required notice to the Petitioner of the filing, thus allowing Petitioner to submit objections to both the brief itself and the trial proceedings to the Court of Appeals.

Included in Petitioner's brief supporting his § 2255 petition are the numerous objections

---

[5]*Anders* requires that when a criminal defendant requests an appeal, his attorney must review the record and determine if an appeal would be frivolous. If the attorney so determines, counsel must move to withdraw and submit a brief referencing anything in the record that might arguably support the appeal. Then, if the court finds non-frivolous issues for appeal, counsel must be provided. *See Anders v. California*, 386 U.S. 738 (1967); *Slater v. United States*, 38 F. Supp. 2d 587 (M.D. Tenn. 1999).

and corrections to the *Anders* brief that he submitted *pro se* to the United States Court of

Appeals.  Assuming Petitioner's allegations of misrepresentations are true, some of the errors he

alleges are minor,[6] some are issues where the Court has already found no error or no resulting

prejudice,[7] and the remainder result from counsel's statement of facts the Court found at trial,[8]

but Petitioner still disputes.  In fact, counsel did not agree with Petitioner's assessment of facts

and objections at the sentencing phase either, and presented them somewhat independently of his

objections to the Court.[9]  The objections Petitioner raised were also presented to the Court of

Appeals on his *pro se* brief to that court.  That court found that the amount of loss as determined

by this Court was accurate, thus rejecting Petitioner's claims regarding the inclusion of the

Geico, Progressive, and USAA claims. *See Williams*, No. 03-4148, slip op. at 2.  Moreover,

under *Miller*, the actual amounts recovered by the Petitioner are irrelevant to the calculation of

the intended loss. *See* 316 F.2d 495.  In addition, the mere fact that counsel filed an *Anders* brief

as opposed to filing a full appeal is of no consequence because the Court of Appeals fully

---

[6]Petitioner cites several factual inaccuracies in counsel's brief including an error in Petitioner's date of arrest, an error about to which document an exhibit was attached, an error regarding what city his co-defendant drove from, an error about whether Petitioner identified himself as Kenneth Williams before emergency or medical personnel, and an improper characterization of his claims as false and use of the term loss.

[7]Petitioner claims that counsel failed to properly document the challenges to the indictment and that counsel inaccurately stated the facts surrounding the judicial complaint.

[8]Petitioner claims that counsel wrongfully stated that he had received money from both Geico and Progressive insurance companies, and that he didn't authorize his lawyer to demand compensation from USAA.

[9]Counsel had two separate sections of the Amended Position with Respect to Sentencing Factors listing his objections, and Petitioner's objections.  He also raised the issue at the sentencing hearing, and the Court did address all of counsel's and Petitioner's objections. (Tr. of Sentencing Hr'g at 8-9).

reviewed the record, and made a determination based upon the numerous issues that were raised by the brief.  Petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced by the purported errors as required for a claim of ineffective assistance of counsel.

**D.**      **Sentence in Excess of Maximum Allowable**

The Petitioner was sentenced to eighty-six months imprisonment, that is, sixty months each  for the wire fraud offenses and thirty-six months for the identity theft offenses, all to be served concurrently, and twenty-six months to be served consecutively for the false use of a social security number.  He argues that this sentence exceeded the maximum allowable by the federal sentencing guidelines, and that the Court failed to apply the applicable statute of limitations.

First, Petitioner contests the amount of loss the Court determined to apply, arguing that the Court included "intended losses" in its calculations.  He also argues that the indictment didn't charge nor did the government prove that the offenses required: (1) "more than minimal planning" under § 2F1.1(b)(2), (2) that Petitioner was an "organizer, leader, manager, or supervisor" in the criminal activity under § 3B1.1©, and (3) that Petitioner willfully obstructed or attempted to obstruct the administration of justice during the investigation, prosecution, and sentencing under § 3C1.1. U.S. SENTENCING GUIDELINES MANUAL (1998).  He also argues that the Court should have followed the District Court in South Carolina's ruling that the Petitioner's prior state and federal offense were the same offense, thereby lowering his criminal history category.  Petitioner also claims that the Court wrongly imposed the twenty-six month sentence under count fifteen to be served consecutively instead of concurrently.  Finally, Petitioner asserts

that the Court failed to consider his financial inability to pay in entering the restitution order.

The Petitioner's arguments regarding the sentencing enhancements and the determination of his criminal history category are not reviewable on a habeas corpus petition. "Barring extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." *United States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999). Furthermore, the Court of Appeals reviewed the entire record and determined that the Court's determination of the criminal history category and application of relevant enhancements was appropriate. *Williams*, No. 03-4148, slip op. at 3. The Court also will not consider the merits of claims already raised and determined on direct appeal. *See Withrow*, 507 U.S. at 720.

With regards to the statute of limitations, the Court is uncertain whether the Petitioner means that the statute of limitations expired for the crimes charged, or that the statute of limitations for filing an insurance claim expired prior to his filing a claim, or that the crimes used to enhance Petitioner's criminal history category were improperly imposed beyond the relevant dates. As Petitioner is *pro se*, the Court will consider all of his potential arguments.

For a non-capital offense, an information or indictment must be filed within five years from the date of the alleged criminal activity, absent another limitation imposed by the criminal statute itself. 18 U.S.C. § 3282 (2000). All of the offenses have limitations of five years. According to the Court's Judgment issued on January 31, 2003, the earliest date that Petitioner's offenses concluded was June 16, 1998. The indictment issued on March 12, 2002 was well within the five year limitation for all of the crimes.

The prior convictions used to determine Petitioner's criminal history category were also imposed within the statutory guidelines. Any prior sentence of imprisonment exceeding one

year and one month imposed "within fifteen years of the defendant's commencement of the

instant offense is counted." USSG § 4A1.2(e)(1).  Any other prior sentence for less than one year

and one month counts only if imposed within ten years of the commencement of the instant

offense.  *Id.*  The Petitioner's criminal history category was determined on the basis of three state

convictions in May 1991 on which he was sentenced to seven months and six days

imprisonment, three federal convictions in April 1991 with sentences of eighteen (18) months,

and a supervised release violation in 1994 with a sentence of twenty-four (24) months. (Tr. of

Sentencing Proceedings at 54-59; Gov't Position on Sentencing Factors at 1.)  The conduct

charged in the instant case concluded as of July 1998.  The current offense occurred within ten

years of the prior state convictions, and well within fifteen years of the federal convictions.

Therefore, all of the crimes were properly included to determine Petitioner's criminal history

category.

Petitioner claims that the statute of limitations had expired on the claim and he had

withdrawn the claim. Therefore, he could not have recovered any money on this claim.

Petitioner cited *Mancuso* in support of his argument, but the Court is neither able to determine

how that case supports Petitioner's argument, nor can it find any specific authority on the matter

(Def't Position with Respect to Sentencing Factors at 6 (citing *Mancuso v. United States*, 42 F.3d

836 (4th Cir. 1994)).[10]  Nevertheless, the Court is informed by the reasoning of *Miller* regarding

intended loss. 316 F.2d 495.  The court there reasoned that the relevant inquiry was the

---

[10]In *Mancuso*, the defendant argued that because the bank breached the contract, he
thought he could properly take out a loan without violating bank fraud laws.  The court rejected
an outright statement that the breach absolved the defendant of responsibility, and instead held
that the breach was merely somewhat relevant to the issue of the defendant's mens rea in
committing the offense. 42 F.3d at 846.

defendant's intent, rather than the loss the victim actually did suffer, or would likely have suffered. *Id*. at 502. Applying that reasoning here, the Petitioner's intent was to collect from each insurance company, and thus regardless of the fact that he actually could not recover the amount he claimed, or could not recover anything at all, his intent is controlling. Similarly, the fact that he submitted a letter of withdrawal does not eliminate his criminal intent at the time of the filing. Thus, the Court finds that Petitioner's argument lacks merit.

Petitioner next contends that the sentence for false use of a Social Security number was improperly imposed consecutively instead of concurrent with the other sentences. The Double Jeopardy Clause precludes federal courts from imposing consecutive sentences unless authorized by Congress. *Whalen v. United States*, 445 U.S. 684 (1980). A consecutive sentence is authorized if the sentence imposed on the count with the highest statutory maximum is less than the total punishment. USSG § 5G1.2(d) (1998). The total punishment is the combined length of the sentences determined by the adjusted combined offense level. Here, the highest maximum sentence for any of the statutes under which Petitioner was sentenced is five years. The total punishment was 70-87 months, based on an offense level of twenty-three (23) and a criminal history category of four (IV). In order to impose a sentence equal to the total punishment, the Court imposed a consecutive sentence of twenty-six (26) months on count fifteen in addition to the sixty (60) months imposed on counts one through twelve. This sentence was appropriate under the Sentencing Guidelines and according to federal law. *See* 18 U.S.C. §3584 (2004); *United States v. Stokes*, 261 F.3d 496, 501 (4th Cir. 2001) (reasoning that Court must impose consecutive sentence on multiple counts to place sentence within the applicable guideline range); *United States v. Ali*, 897 F. Supp. 267, 268 (E.D. Va.1995).

Finally, Petitioner objects to the restitution order, stating that the Court failed to consider his ability to pay.  An order of restitution is based on the "full amount of each victim's losses ... without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (2004).  A court need not consider the defendant's ability to make restitution, but must consider the financial resources, projected earnings, and financial obligations of the defendant in determining the manner in which the restitution is to be paid. *See* 18 U.S.C. § 3664(f)(2); *United States v. Dawkins*, 202 F.3d 711, 716 (4th Cir. 2000).  The Defendant has the burden of proving his financial resources and inability to pay restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e) (2004).  The Petitioner did not raise this issue in his objections to the pre-sentence report, nor is there any mention of the issue on the record. *See* Position of the Def. with Respect to Sentencing Factors.  He therefore failed to meet his burden under the restitution statute.  Petitioner has shown no cause for his failure to raise this issue at sentencing, and thus cannot now raise the issue on collateral review. *Frady*, 456 U.S. at 167-68.

**E.**     ***Apprendi* and *Blakely* objections**

The Petitioner claims that the Court's findings regarding sentencing, and subsequent application of the Sentencing Guidelines violates the law established by *Apprendi* and *Blakely*. *Apprendi* requires that facts increasing the penalty for an offense beyond the prescribed statutory maximum be proved beyond a reasonable doubt by the jury.  *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *United States v. Hammoud*, No. 03-4253, 2004 WL 2005622, at *24 (4th Cir. Sept. 8, 2004).  *Blakely* similarly invalidated a Washington state criminal statute allowing for judicially imposed enhancements greater than the maximum specified by the statute based upon facts not found by a jury. *Blakely v. Washington*, 124 S.Ct. 2531 (2004).  The Petitioner argues

that the enhancements that the Court applied for obstruction of justice[11] and for being a criminal supervisor or organizer, and the determination of his criminal history category were not determined by the jury and thus violate both *Apprendi* and *Blakely*. *Apprendi* only applies when an imposed sentence exceeds the maximum authorized by the statute. *Hammoud*, 2004 WL 2005622, at *28 (citing *Edwards v. United States*, 523 U.S. 511 (1998)). Here, though the Court did make determinations of the criminal history category and the enhancements, the Petitioner's sentences did not exceed the statutory maximums for any of the convicted offenses. The wire fraud was punishable by a maximum sentence of five years. 18 U.S.C. § 1343 (1994). The maximum penalty for identity theft was three years imprisonment. 18 U.S.C. §1028(a)(7) (1996). The punishment for false use of a social security number was a maximum sentence of five years imprisonment. 42 U.S.C. § 408(a)(7)(B) (1998). The Petitioner's sentences on all counts were within these statutory maximums and thus Petitioner's arguments under *Apprendi* and *Blakely* lack merit. In addition, the Fourth Circuit has held that *Apprendi* does not apply retroactively to cases on collateral review, so Petitioner cannot now raise such objections. *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001).

**F.    Miscellaneous Arguments**

Petitioner asserts that he was denied a fair trial because an FBI witness violated the Court's sequestration order by talking to other witnesses outside of court**.** Most important, this allegation does not rise to the level of a constitutional violation, and thus cannot be raised in a § 2255 petition. 28 U.S.C. § 2255. The Petitioner argues that FBI intelligence research specialist

---

[11]The Supreme Court has independently upheld the validity of obstruction of justice enhancements based on perjury during a criminal trial, though the charge was not included in the indictment or found by a jury. *See United States v. Dunnigan*, 507 U.S. 87, 92-96 (1993).

Zoubul was specifically ordered not to discuss the case with anyone, that she then did talk to other witnesses over the weekend of August 3-4, 2002, and that she then committed perjury when she testified that she had not been instructed not to discuss the case with anyone.  The Federal Rules of Evidence provide that upon the motion of a party or the court, the court can order witnesses excluded so they don't hear the testimony of other witnesses.  FED. R. EVID. 615 (2004).  If there is a violation of a sequestration order, the Court usually will only strike past testimony or disallow future testimony if the Defendant has suffered prejudice. *United States v Blasco*, 702 F.2d 1315, 1327 (11th Cir. 1983); *Ives v. Boone*, 101 Fed. Appx. 274, 282 (10th Cir. 2004) (stating that excluding the witness's testimony is within the trial court's discretion). Reviewing the trial transcript, the Court acknowledged that it had not given Ms. Zoubul a specific order after her first day of testimony.  Because there was no specific order given, Ms. Zoubul did not commit perjury when she testified that she had not been given such an order. (Tr. at 335.)  Also, the Court discussed the matter outside the presence of the jury to determine the facts of the questioned conversations.  Counsel for the government stated that he met with Ms. Zoubul, another FBI agent, and Mr. and Mrs. Kenneth Williams to discuss their testimony for the following day.  Counsel for the Government had ordered Ms. Zoubul and the other FBI agent not to discuss any of the previous testimony with the witnesses who had yet to testify, and was present during the entire meeting and did not witness any improper discussion of past testimony. The Court finds that the initial ruling allowing Ms. Zoubul's testimony was well within its discretion.  The Petitioner here has identified no specific testimony of a witness that suggests that Ms. Zoubul in any way interfered with that testimony.  He therefore can not show that the Court's ruling was in error, nor that it rises to the level of a Constitutional violation.  As such, he

is not entitled to any relief under a habeas corpus petition.

The Petitioner also argues that the Respondent's comments that he was a "con artist", "3-time convicted felon," and that he didn't have any corroborating evidence were prejudicial and denied him a fair trial. The Petitioner must prove two elements to establish prosecutorial misconduct: (1) that the prosecutor's remarks were improper, and (2) that the remarks prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *See Romano v. Oklahoma*, 512 U.S. 1 (1994) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The Petitioner testified during trial, thus allowing the Government to raise the issue of his prior felony convictions. FED. R. EVID. 609 (2004). The Government's comment about Petitioner being a con artist was simply a characterization of the facts, which is appropriate in closing arguments. *See United States v Windom*, 510 F.2d 989 (5th Cir. 1975) (finding no reversible error when prosecutor referred to the defendant during argument as a "con artist."). Petitioner's claim of prosecutorial misconduct therefore lacks merit.

The Petitioner also argues that he was denied a fair and impartial trial. In substance, however, Petitioner merely reasserts claims that have been addressed above regarding improper venue, ineffective assistance of counsel, judicial misconduct, and excessive sentence. As Petitioner has raised no new arguments, this claim will not be considered separately.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate his Sentence is  **DENIED.**

The Petitioner has also submitted an Emergency Motion for Bail pending the resolution of his § 2255 petition. The Motion reasserts Petitioner's *Apprendi* and *Blakely* claims. The Court has considered the substance of Petitioner's Motion along with his habeas corpus petition

26

and found it to lack merit.  In addition, as his § 2255 petition has been denied, his Emergency

Motion for Bail is also **DENIED.**  Finally, since the Court has ruled on Petitioner's § 2255

petition, Petitioner's Motion to Expedite § 2255 Ruling is dismissed as **MOOT**.

Petitioner has also filed a Motion for Recusal, Motion to Correct Perjury, Renewed

Motion to Correct Perjury and Invocation of Individual Rights, Motion for Summary judgment,

Motion to Stop Judicial Fraud, Motion for Designation as a Miscarriage of Justice and Motion

for Protection, Motion to Modify the Court's 10/27/2004 Order to Remove Unlawful Limitations

and a Motion to Invoke Additional Rules Provided for by Law.  The Court finds each of these

motions to be without merit and each is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of the Order to Petitioner and Respondent.

The Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a

written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  The Clerk must receive this written

notice within sixty (60) days from this Order's date.


**IT IS SO ORDERED**.

$$\underline{\hspace{3cm}}/s/\underline{\hspace{4cm}}$$
RAYMOND A. JACKSON
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 18, 2006